RICHARD A. STEVENS, administrator *cum testamento annexo* of William K. Miller, deceased,

*v.*

MARY H. DEWEY et al.

1. A decree directing an administrator *cum testamento annexo* to distribute money according to the terms of a will is not a decree construing the will.

2. Under *Gen. Stat. p. 2391,* the orphans court has authority to construe a will only on special proceedings instituted on the application of some party in interest, bringing every person interested into court.

3. Testator gave his wife all his estate for life, "and what is left of the household goods and furniture, to dispose of as she deems proper; devising, also, my real estate to her." After several bequests of money, all payable after his wife's death, he gave, by the ninth clause, the balance of his estate "so left" after his wife's death, if any, to a church on certain trusts. By a codicil he revoked the ninth clause, and devised land to the church, and declared that, in case his estate could not pay all the bequests in full, his estate should be divided in proportion "to said bequests, *pro rata.*"—*Held*, that on the death of the wife, who survived testator, the administrator *cum testamento annexo* was justified, because of the serious questions involved, in asking the court of chancery to construe the will.

On demurrer to bill.

The complainant, as administrator *cum testamento annexo* of William K. Miller, deceased, files his bill asking for the aid of the court in construing the will of his testator, with a statement

that there are adverse claims made by two classes of defendants, who are made parties, and prays that they may interplead.

The facts set forth in the bill and admitted by the demurrer are as follows :

By the second clause of his will, the testator gave to his wife, Elizabeth,

"all my real estate and personal property to be for her sole use and maintenance to use as she deems proper for her support and maintenance during her natural life, the same as I could if living, and what is left of the household goods and furniture to dispose of as she deems proper devising also my real estate to her."

He then made several bequests of specific sums of money to several persons, all payable after the death of his wife.

By the ninth clause he gave " the balance of my estate so left after the decease of my wife, if any there be," to a Methodist Episcopal church, upon certain trusts.

There is no other disposition of the residue except that contained in the ninth clause.

By a codicil he revoked the ninth clause, declared it to be of no effect, and devised to the church a certain piece of land, then added this clause :

"It is understood that in case my estate could not pay all the bequests in full, my estate shall be divided in proportion to the said bequests, *pro rata.*"

His wife survived him, proved his will, and died testate of a will by which she made certain small specific bequests of household goods to some twelve or more different persons, then gave the remainder of her personal property to be divided equally among the persons previously mentioned in her will. She then, by virtue of a supposed authority given to her in her husband's will, appointed the complainant her executor and also executor of her husband's will. She made a specific devise of the real estate. Finally, she made another specific bequest to certain persons of " whatever there may be remaining of my husband's estate after paying the legacies that he has given in his will."

This will was duly proven before the surrogate of Morris county.

After the death of the widow, the complainant was appointed administrator *cum testamento annexo* of the husband's estate, and duly exhibited his account thereof to the orphans court of Morris county, showing a balance in his hands of $1,422.23, which account was confirmed by the court; and the court, by its decree of confirmation, directed complainant to distribute the balance in his hands "according to the terms of the aforesaid last will and testament of William K. Miller, deceased."

The next of kin of the testator claim that he died intestate of the sum of money in question (which, it may be assumed, remained after the payment of the several legacies mentioned in his will), and, therefore, that they are entitled to have the same equally divided among them.

The persons named in the last clause of the will of Mrs. Miller, on the other hand, contend, as may be inferred, that inasmuch as the use of the whole of the testator's personal estate was given to his wife for life, with power to use as much of it as she desired for her support and maintenance, and no bequest over at her death was made, the whole interest vested in the tenant for life, and hence that it passed under her will.

The grounds of demurrer are—*first*, that the complainant has already submitted himself to a court having jurisdiction of the parties and the subject-matter, and has obtained a decree of that court directing him in the performance of his duty in the premises, and that the effect of the bill is to ask the court to construe the decree of the orphans court, and that this court has no such jurisdiction; and *second*, that the will of Miller conveys only a legal title, and the effect of the court construing the will is the passing by it on a legal title, a matter over which the court has no jurisdiction.

*Mr. John B. Vreeland*, for the complainant.

*Mr. Maximilian T. Rosenberg*, for the demurrants.

, PITNEY, V. C. :

The principal reliance of the defendant was upon the first point, to wit, that the matters have already been passed upon by the orphans court of the county of Morris in the clause contained in the decree.

This point is without the least strength. The direction of the court to distribute the money according to the terms of the will is the ordinary addenda to a decree allowing accounts, in use by the orphans court of the county of Morris for many years, and does not approach in any degree a decree construing the will. The question still remains, Who is entitled to it under the will of Mr. Miller?

It was further argued, however, that the complainant, having once gone into the orphans court to submit his account, should have procured a construing decree from that court, which has full jurisdiction of the subject under the one hundred and fifty-first section of the Orphans Court act (*Gen. Stat. p. 2391*), which section had its origin in 1872. *P. L. of 1872 p. 47.* The complete answer to that point is found in the case of *Adams* v. *Adams, 1 Dick. Ch. Rep. 298*, decided by the court of errors and appeals. It was there held that the orphans court had no authority to make any such decree except upon special proceedings instituted upon the application of some party in interest, and bringing every one of the parties interested into court; that a general publication of an intention to settle an account was not such notice. The bill is silent as to whether any such application has been made in this case or not ; but, following the maxim *quod non apparet non est*, it must be presumed that no such application has been made.

That this court has jurisdiction of such a suit is too plain for argument, and the machinery of this court for obtaining jurisdiction of all the parties and doing complete justice among them is at least equal, if not superior, in efficiency and cheapness to that of the orphans court.

It only remains to inquire whether or not there really is any serious question arising upon the face of the will to warrant the complainant in seeking the aid of this court. Without express-

ing the least opinion upon the true construction of the will, I conclude, after a consideration of its peculiar provisions, that there is such a question, and that the complainant was entirely justified in coming to this court.

The demurrer must be overruled, with costs, with leave to answer in twenty days.